**OHIO CONSOLIDATED TELEPHONE COMPANY, Plaintiff, v. COMMUNICATIONS WORKERS OF AMERICA (AFL-CIO) et, Defendants.**

Common Pleas Court, Clinton County.

No. 18270.   Decided October 6, 1959.

Power, Griffith & Jones, Columbus, for plaintiff.
Waite, Schindel, Bayless & Schneider, Cincinnati, for defendants.

## OPINION

By SWAIM, J.

On February 13, 1959, within the Rule day for the filing of an Amended Petition herein, by the Plaintiff, as fixed by this Court of Common Pleas in its Entry and Order of December 31, 1958, Journal 104, page 259, there was filed in this Case, a  Motion in the following words:

### MOTION

Now comes General Telephone Company of Ohio and represents that it is the successor in interest of Ohio Consolidated Telephone Company by reason of a purchase of all the assets and choses in action of Ohio Consolidated Telephone Company, and as such successor in interest, requests the Court for an order substituting General Telephone Company of Ohio for Ohio Consolidated Telephone Company as the. Party Plaintiff.

/s/   Power, Griffith & Jones
/s/   Chester P. Fitch
Attorneys for Plaintiff.

With the said Motion, the said attorneys forwarded a proposed Entry of Substitution of Party Plaintiff, together with an Amended Petition in the name of the substituted Party Plaintiffs.

Although the Motion was not signed by any officer of the General Telephone Company of Ohio, nor by any attorneys claiming to represent such company, the Defendants raised no objection to said Motion,

but did request a hearing in open Court, upon such Motion, to determine if the proper legal steps as to said alleged purchase were correct in detail.

Sec. 2307.25 R. C., reads in part:

On any other transfer of interest, the action may be continued in the name of the original party, or the court may allow the person to whom the transfer is made to be substituted for him.

In the hearing on said Motion before this Court of Common Pleas, there appeared on behalf of the Motion, William Postlewaite, Esq. of the firm of Messrs. Power, Griffith & Jones, Attorneys-at-Law, Columbus, Ohio, and there appeared on behalf of the Defendants, Herbert Shaffer, Esq., of the firm of Messrs. Waite, Schindel, Bayless & Schneider, Attorneys-at-Law, Cincinnati, Ohio. On behalf of the Motion, testimony was offered by Herbert J. Vrooman, of Marion, Ohio, former Secretary and Treasurer of Ohio Consolidated Telephone Company, and the present Controller of General Telephone Company, of Ohio; and several exhibits were presented in connection with his testimony. No other evidence of any kind was offered in support of or against said Motion. The Transcript of the proceedings before the Court, on said Motion, was filed in this case on August 15, 1959.

Two questions are involved in this matter of the Substitution of Party Plaintiff; one under the Corporation Act of Ohio, and the other under the Ohio Public Utilities Commission laws. The former will be considered herein first.

Sec. 1701.54 R. C. **Action by shareholders or directors without a meeting.** Unless the articles or the regulations otherwise provide, any action which may be authorized or taken at a meeting of the shareholders or of the directors, as the case may be, may be authorized or taken without a meeting in a writing or writings signed by all the shareholders who would be entitled to notice of a meeting of the shareholders held for such purpose, or by all the directors, respectively, which writing or writings shall be filed with or entered upon the records of the corporation. Any certificate with respect to the authorization or taking of any such action which is required to be filed in the office of the secretary of state shall recite that the authorization or taking of such action was in a writing or writings signed as specified in this section.

Sec. 1701.86 R. C. **Voluntary Dissolution.** (A) A corporation may be dissolved voluntarily in the manner provided in this section. (B) A resolution of dissolution for a corporation shall set forth:

(1) That the corporation elects to be dissolved;

(2) Any additional provision deemed necessary with respect to the proposed dissolution and winding up.

(D) The directors may adopt a resolution of dissolution in the following cases:—

(3) When substantially all of the assets have been sold at judicial sale or otherwise;

(E) The shareholders at a meeting held for such purpose may

adopt a resolution of dissolution by the affirmative vote of the holders of shares entitling them to exercise two-thirds of the voting power of the corporation on such proposal or, if the articles provide or permit, by the affirmative vote of a greater or lesser proportion, though less than a majority, of such voting power, and by such affirmative vote of the holders of shares of any particular class as is required by the articles. Notice of the meeting of the shareholders shall be given to all the shareholders whether or not entitled to vote thereat.

(F) Upon the adoption of a resolution of dissolution, a certificate shall be prepared setting forth the following:

(1) The name of the corporation;

(2) A statement that a resolution of dissolution has been adopted;

(3) A statement of the manner of adoption of such resolution, and, in the case of its adoption by the incorporators or directors, a statement of the basis for such adoption;

(4) The place in this state where its principal office is or is to be located;

(5) The names and addresses of its directors and officers, unless the resolutions of dissolution is adopted by the incorporators, in which even the names and addresses of the incorporators shall be set forth in the certificate;

(6) The name and address of its statutory agent.

(G) Such certificate shall be signed as follows:

(1) When the resolution of dissolution is adopted by the incorporators or a majority of them, the certificate shall be signed by not less than a majority of them;

(2) When the resolution is adopted by the directors or by the shareholders, the certificate shall be signed by the president or a vice-president and by the secretary or an assistant secretary, unless, within thirty days after the adoption of the resolution, the officers shall fail to execute and file such certificate, in which event the certificate of dissolution may be signed by any three shareholders and shall set forth a statement that the persons signing the certificate are shareholders and are filing the certificate because of the failure of the officers to do so.

(H) A certificate of dissolution, filed in the office of the secretary of state, shall be accompanied by:

(1) An affidavit of one or more of the persons executing the certificate of dissolution or of an officer of the corporation containing a statement of the counties, if any, in this state in which the corporation has personal property or a statement that the corporation is of a type required to pay personal property taxes to state authorities only;

(2) A receipt, certificate, or other evidence showing the payment of all franchise, sales, use, and highway use taxes accruing up to the date of such filing, or that such payment has been adequately guaranteed;

(3) A receipt, certificate, or other evidence showing the payment of all personal property taxes accruing to the date of such filing;

(4) A receipt, certificate, or other evidence from the bureau of unemployment compensation showing that all contributions due from the corporation as an employer have been paid, or that such payment has

been adequately guaranteed, or that the corporation is not subject to such contributions;

(I) Upon the filing of a certificate of dissolution and such accompanying documents, the corporation shall be dissolved.

**Sec. 1701.87 R. C. Public notice of Voluntary Dissolution.** Following the filing of the certificate of dissolution, the directors or the incorporators, as the case may be, shall forthwith cause a notice of voluntary dissolution to be published once a week on the same day of each week for two successive weeks, in a newspaper published and of general circulation in the county in which the principal office of the corporation was to be or is located, and shall forthwith cause written notice of the dissolution to be given either personally or by mail, to all known creditors, of, and to all known claimants against, the dissolved corporation.

The Court finds the following in the Exhibits, in connection with the testimony of Mr. Herbert J. Vrooman:

Exhibit 6: Certified copy of Unanimous Consent to Dissolution:

I, Herbert J. Vrooman, do hereby certify that I am the last Secretary of Ohio Consolidated Telephone Company, an Ohio Corporation, that as such last Secretary, I am the keeper of the corporate records and the seal of said Corporation; that the following is a true and correct copy of the Unanimous Consent to Dissolution of Ohio Consolidated Telephone Company executed by the holder of record of all the outstanding shares of said Corporation.

UNANIMOUS CONSENT TO DISSOLUTION

OF

OHIO CONSOLIDATED TELEPHONE COMPANY.

The undersigned being the holder of record of all the outstanding shares of Ohio Consolidated Telephone Company, a corporation organized and existing under the laws of Ohio, hereby consents the dissolution of such corporation; and hereby authorizes and directs the President or a Vice President and the Secretary or an Assistant Secretary of said corporation to execute and verify a Certificate of Dissolution in the form required by the revised code of Ohio and to file the same in the office of the Secretary of State of the State of Ohio.

| Name | Number of Shares |
| --- | --- |
| General Telephone Company of Ohio | 109,092 |

By /s/ C. E. Williams

President.

Dated: June 13, 1958.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed the seal of Ohio Consolidated Telephone Company this 22nd day of June, 1959.

(CORPORATE SEAL)                    /s/ Herbert J. Vrooman

Last Secretary of

OHIO CONSOLIDATED TELEPHONE COMPANY.

And the Court also finds the following in the Exhibits, in connection with the testimony of Mr. Herbert J. Vrooman:

Exhibit 4: Certified Copy of Resolution:

I, Herbert J. Vrooman, do hereby certify that I am the last Secretary of Ohio Consolidated Telephone Company, an Ohio Corporation, that as such last Secretary, I am the keeper of the corporate records and seal of said Corporation; that the following is a true and correct copy of a certain resolution adopted by the Board of Directors at a special meeting duly called and convened at Marion, Ohio, on June 16, 1958, at 11:00 A. M.; at which meeting a quorum of the Board was present and voted throughout; and I do further certify that this resolution has not been overruled, revoked or amended in any way whatsoever but is in full force and effect:

RESOLVED, That this Company, shall, upon receipt of a duly executed consent by the holder of all the outstanding stock of this Company, be dissolved, and the proper officers of the Company are hereby authorized and directed to execute and file in the office of the Secretary of State of the State of Ohio, a certificate of dissolution and such other documents as may be necessary to bring about the dissolution of this Company, and such officers are further authorized to give and/or publish notice of such dissolution as required by law and to take any and all such other steps as counsel may advise to bring about the complete liquidation of this Company during the current taxable year.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed the seal of Ohio Consolidated Telephone Company this 22nd day of June, 1959.

(CORPORATE SEAL)  /s/  Herbert J. Vrooman

Last Secretary of
OHIO CONSOLIDATED TELEPHONE COMPANY.

And the Court also finds the following in the Exhibits, in connection with the testimony of Mr. Herbert J. Vrooman.

Exhibit 3. Certificate of Dissolution, as follows:

CERTIFICATE OF DISSOLUTION
OF
OHIO CONSOLIDATED TELEPHONE COMPANY

C. E. WILLIAMS, President, and H. J. Vrooman, Secretary of OHIO CONSOLIDATED TELEPHONE COMPANY, an Ohio Corporation, DO HEREBY CERTIFY:

1. The name of this corporation is OHIO CONSOLIDATED TELEPHONE COMPANY.

2. This corporation has adopted a resolution electing to be dissolved.

3. Said resolution was adopted by the unanimous written consent of the holders of all the outstanding shares of the corporation on the 16th day of June, 1958.

4. The place in this State where its principal office is located is Portsmouth, Ohio.

5. The names and addresses of the directors and officers of this corporation are as follows:

| Name | Office | Address |
|---|---|---|
| C. E. Williams | President and Director | 197 S. Main Street Marion, Ohio |
| F. W. Hamper | Operating Vice-President | 197 S. Main Street Marion, Ohio |
| Richard N. Cole | Vice-President and Director | 197 S. Main Street Marion, Ohio |
| H. J. Vrooman | Secretary and Treasurer | 197 S. Main Street Marion, Ohio |

| Name | Office | Address |
|---|---|---|
| J. Russell Anderson | Assistant Secretary and Assistant Treasurer | 197 S. Main Street Marion, Ohio |
| Robert H. Henderson | Controller | 197 S. Main Street Marion, Ohio |
| Leonard W. Snodgrass | Assistant Controller and Director | 197 S. Main Street Marion, Ohio |
| Henry C. Woods | Director | Room 1500 59 E. Van Buren St. Chicago 5, Illinois |
| August C. Purpura | Director | Masonic Building Eighth Floor Portsmouth, Ohio. |

The undersigned have been authorized to execute and file this Certificate by the written consent of the holders of record of all the outstanding shares of said corporation.

IN WITNESS WHEREOF, said C. E. Williams, President, and H. J. Vrooman, Secretary, of OHIO CONSOLIDATED TELEPHONE COMPANY, acting for and on behalf of said corporation, have hereunto subscribed their names and caused the seal of said corporation to be hereunto affixed this 18th day of June, 1958.

(CORPORATE SEAL)

/s/ C. E. Williams
President

/s/ H. J. Vrooman
Secretary.

UNITED STATES OF AMERICA )
    STATE OF OHIO )
OFFICE OF THE SECRETARY OF STATE )

I, TED W. BROWN, Secretary of State of the State of Ohio, do hereby certify that the foregoing is an exemplified copy, carefully compared by me with the original record now in my official custody as Secretary of State, and found to be true and correct, of the

CERTIFICATE OF DISSOLUTION
OF
OHIO CONSOLIDATED TELEPHONE COMPANY

Filed in this office on the 20th day of June, A. D. 1958, and recorded in Roll B 53, Frame 525, of the Records of Incorporations.

WITNESS my hand and official seal, at Columbus, this 20th day of June, A. D. 1958.

/s/ Ted W. Brown

(OFFICIAL SEAL) Secretary of State

The Court finds the following sections of the Revised Code relate to the disposition of assets of a corporation, particularly of a dissolved corporation:

**Sec. 1701.76 R. C. Sale or other disposition of corporations assets.** (A) A lease, sale, exchange, transfer or other disposition of all, or substantially all, the assets, with or without the good will, of a corporation, if not made in the usual and regular course of its business, may be made upon such terms and for such consideration, which may consist, in whole or in part, of money or other property of any description, including shares or other securities or promissory obligations of any other corporation, domestic or foreign, as may be authorized: (1) by the directors, either before or after authorization by the shareholders as required in this section; and (2) at a meeting of the shareholders held for such purpose, by the affirmative vote of the holders of shares entitling them to exercise two-thirds of the voting power of the corporation on such proposal, or if the article so provide or permit, by the affirmative vote of a greater or lesser proportion, but not less than a majority, of such voting power, and by such affirmative vote of the holders of shares of any particular class as is required by the articles. Notice of the meeting of the shareholders shall be given to all shareholders whether or not entitled to vote thereat. Such notice shall be accompanied by a copy or summary of the terms of such transaction. - - -

**Sec. 1701.88 R. C. Winding up; powers and duties of directors.**

(A) When a corporation is dissolved voluntarily or when the articles of a corporation have been cancelled or when the period of existence of the corporation specified in its articles has expired, the corporation shall cease to carry on business and shall do only such acts as are required to wind up its affairs, but for such purpose it shall continue as a corporation.

(B) Any claim existing or action or proceeding pending by or against the corporation or which would have accrued against it may be prosecuted to judgment, with right of appeal as in other cases, but any proceeding, execution or process, or the satisfaction or performance of any order, judgment or decree, may be stayed as provided in §1701.89 R. C.

(C) Any process, notice or demand against the corporation may be served by delivering a copy to an officer, director, liquidator, or person having charge of its assets, or, if no such person can be found, to the statutory agent.

(D) The directors of the corporation and their survivors or successors shall act as a board of directors in accordance with the regulations and bylaws until the affairs of the corporation are completely wound up. Subject to the orders of courts of this state having jurisdiction over the corporation, the directors shall proceed as speedily as is practicable to a complete winding up of the affairs of the corporation,

and, to the extent necessary or expedient to that end, shall exercise all the authority of the corporation. Without limiting the generality of such authority, they may fill vacancies, elect officers, carry out contracts of the corporation, make new contracts, borrow money, mortgage or pledge the property of the corporation as security, sell its assets at public or private sale, make conveyances in the corporate name, lease real estate for any term, including ninety-nine years renewable forever, settle or compromise claims in favor of or against the corporation, employ one or more persons as liquidators to wind up the affairs of the corporation with such authority as the directors see fit to grant, cause the title to any of the assets of the corporation to be conveyed to such liquidators for that purpose, apply assets to the payment of obligations, and, after paying or adequately providing for the payment of all known obligations of the corporation, distribute the remainder of the assets either in cash or in kind among the stockholders, according to their respective rights and interests, and perform all other acts necessary or expedient to the winding up the affairs of the corporation.

(E) Without limiting the authority of the directors, any action within the purview of this section which is authorized or approved at a meeting held for such purpose by the holders of shares entitling them to receive two-thirds of the value of the remaining assets shall be conclusive for all purposes upon all shareholders of the corporation.

(F) All deeds and other instruments of the corporation shall be in the name of the corporation and shall be executed, acknowledged and delivered by the officers appointed by the directors.

And the Court finds the following among the Exhibits, in connection with the testimony of Mr. Vrooman:

Exhibit 5. **Certified Copy of Resolution.**

I, Herbert J. Vrooman, do hereby certify that I am the last Secretary of Ohio Consolidated Telephone Company, an Ohio Corporation, that as such last Secretary, I am the keeper of the corporate records and the seal of said Corporation; that the following is a true and correct copy of a certain Resolution adopted by the Board of Directors at a special meeting duly called and convened at Marion, Ohio, on June 16, 1958, at 11:00 A. M.; at which meeting a quorum of the Board was present and voted throughout; and I do further certify that this resolution has not been overruled, revoked or amended in any way whatsoever but is in full force and effect.

RESOLVED, That upon the filing of such certificate of dissolution in the Office of the Secretary of State of Ohio, the proper officers of this Company are hereby authorized and directed to distribute to General Telephone Company of Ohio, the holder of all the outstanding stock of this Company, all the properties, businesses, assets, privileges, claims, rights and franchises of this Company upon receipt from General Telephone Company of Ohio of an agreement to assume all the liabilities of this Company, and such officers are hereby authorized in connection with such distribution to execute and deliver, in the name and on behalf of this Company, such deeds, assignments, bills of sale and other

instruments as they shall deem appropriate or as General Telephone Company of Ohio may request.

IN WITNESS WHEREOF I have hereunto set my hand and affixed the seal of Ohio Consolidated Telephone Company this 22nd day of June, 1959.

(CORPORATE SEAL)                      /s/   Herbert J. Vrooman

Last Secretary of
OHIO CONSOLIDATED TELEPHONE COMPANY.

Among other provisions in the laws relating to the Public Utility Commission, the Court notes the following section:

**Sec. 4905.48 R. C. Transactions between public utilities.** With the consent and approval of the Public Utilities:

(A) Any two or more public utilities furnishing a like service or product and doing business in the same municipal corporation or locality within this state, or any two or more public utilities whose lines intersect or parallel each other within this state, may enter into contracts with each other that will enable them to operate their lines or plants in connection with each other.

(B) Any public utility may purchase or lease the property, plant, or business of any other such public utility.

(C) Any such public utility may sell or lease its property or business to any other such public utility.

(D) Any such public utility may purchase the stock of any other such public utility.

To obtain the consent and approval of the commission for such authority, a petition, joint or otherwise, signed and verified by the president and secretary of the respective companies, clearly setting forth the object and purposes desired, and stating whether or not it is for the purchase, sale, lease or making of contracts, or for any other purpose provided in this section, and also the terms and conditions of the same, shall be filed with the commission. If the commission deems it necessary, it shall upon the filing of such petition, fix a time and place for hearing.

If, after, such hearing or in case no hearing is required, the commission is satisfied that the prayer of such petition should be granted and the public will thereby be furnished adequate service for a reasonable and just rate, rental, toll or charge, it shall make such order as it deems proper and the circumstances require, and thereupon the things provided for in such order may be done.

In connection with the testimony of Mr. Vrooman, we find Exhibit 2, which is a Certified copy, dated June 19, 1958, of a Commission Order (The Public Utilities Commission of Ohio) dated May 29, 1958, in Case No. 27,787, which was styled:

In the Matter of the Joint Application of General Telephone Company of Ohio for authority to acquire by purchase and of Ohio Consolidated Telephone Company and The Chesapeake Telephone Company for authority to sell, transfer and convey to General Telephone Company of Ohio all of their respective properties and assets, and for authority to issue, deliver and exchange certain first mortgage bonds,

preferred and common stocks in furtherance of such acquisitions, and Further, in the Matter of the Application of General Telephone Company of Ohio to issue and sell certain first mortgage bonds, preferred and common stocks for the purpose of reimbursing its treasury, in part, for uncapitalized capitalizable expenditures to the date of this application.

In the same, the Public Utilities Commission made a **Finding and Order**, in part, as follows:

This day this cause came on to be heard upon the joint application of General Telephone Company of Ohio, Ohio Consolidated Telephone Company and The Chesapeake Telephone Company for authority of General Telephone Company of Ohio to acquire all of the plant, property and assets of Ohio Consolidated Telephone Company and The Chesapeake Telephone Company and for authority for Ohio Consolidated Telephone Company and The Chesapeake Telephone Company to transfer and convey said plant, property and assets to General Telephone Company of Ohio, and thereby consolidate the operations and operating areas of said Applicants upon the terms and conditions stated in the application.

The Commission, being fully advised in the premises, finds:

That said Applicants have full corporate authority to consummate all the transactions proposed subject to the consent and approval of this Commission and that said application is proper;

That all of the issued and outstanding common capital stock of Applicants, General Telephone Company of Ohio, Ohio Consolidated Telephone Company and The Chesapeake Telephone Company is owned by General Telephone Corporation;

That Applicant, the General Telephone Company of Ohio, requests consent and authority of this Commission to record the plant and property to be acquired as a distribution in liquidation from Ohio Consolidated Telephone Company and The Chesapeake Telephone Company on its books at their respective book values, and its earned surplus shall be the sum of the earned surpluses of the three companies;

That General Telephone Company of Ohio requests consent and authority of this Commission to issue 626,506 shares of its no par common capital stock with a stated value of $5.00 per share, or an aggregate issue price of $3,132,530, in exchange for all of Ohio Consolidated Telephone Company's issued and outstanding common capital stock having a stated value of $3,000,030 an all of The Chesapeake Telephone Company's issued and outstanding common capital stock having a stated value of $132,500;

That Applicant, General Telephone Company of Ohio, requests consent and authority of this Commission to issue its First Mortgage Bonds, 4¼% Series Due 1978, in the aggregate amount of $4,986,000 in exchange for all of Ohio Consolidated Telephone Company's outstanding bonds in a like principal amount;

That Applicant, General Telephone Company of Ohio, further requests consent and authority of this Commission to issue additional First Mortgage Bonds, 4¼% Series Due 1988 in the aggregate principal amount of $4,000,000, and to sell said bonds at private sale for not less than the

principal amount thereof, the proceeds of which are to be used to retire short term notes and advancements. ____

That Applicant, General Telephone Company of Ohio, further requests consent and authority of this Commission to issue 110,000 of its Cumulative Preferred Stock without par value but with a stated value of $25.00 per share, aggregating a stated value of $2,750,000 - - and to sell the same at private sale for not less than the stated value thereof. The proceeds of said stock are to be used to retire short term notes and advancements, to reimburse applicant's treasury and to provide applicant with funds for construction purposes;

That Applicant, General Telephone Company of Ohio, further requests consent and authority of this Commission to issue 809,216 shares of its no par common stock at a stated value of $5.00 per share aggregating a stated value of $4,046,080 and to sell the same to General Telephone Corporation for not less than the stated value thereof, the proceeds of which are to be used to retire certain demand notes;

That Applicants allege that they have a combined balance of uncapitalized capitalizable expenditures as of December 31, 1957, in the amount of $15,231,025.35 for validation of which due application has been made. A detailed examination has not been completed of applicant's capital expenditures by this Commission and therefore jurisdiction should be retained over this proceeding for the purpose of determining the amount, if any, of said uncapitalized capitalizable expenditures;

That Applicant, Ohio Consolidated Telephone Company, has heretofore given notice of redemption of all of its presently issued and outstanding 6% Preferred Stock in the aggregate par value of $2,499,000. Applicant will charge its earned surplus account with $62,475, the redemption premium thereon;

That Applicant, Ohio Consolidated Telephone Company has heretofore redeemed $100,000 principal amount of Serial Notes and $7,000 principal amount of Series "C" Bonds, and that Applicant, The Cheasapeake Telephone Company, has redeemed long term notes in the principal amount of $145,000;

That the total amount of securities Applicant, General Telephone Company of Ohio, is seeking consent and authority to issue aggregate $18,914,610 of which $10,869,530 will be issued for the exchanges of common stock and bonds proposed herein, the retirement of short term notes given to retire secured and serial notes in the amount of $252,000, for redemption of preferred stock, and the remaining balance of $8,-045,080 will be issued against uncapitalized expenditures;

That the Commission is satisfied that its consent and authority should be granted for the acquisition by the General Telephone Company of Ohio and the transfer by Ohio Consolidated Telephone Company and The Chesapeake Telephone Company of the aforesaid plant and property;

It is therefore

ORDERED, that Applicant, General Telephone Company of Ohio, be, and hereby it is, authorized to acquire upon the terms and conditions set forth in the application and exhibits thereto all of the plant and property and other assets and to assume the liabilities of Ohio Con-

solidated Telephone Company and The Chesapeake Telephone Company. It is further

ORDERED, that Applicants, Ohio Consolidated Telephone Company and The Chesapeake Telephone Company, be, and hereby are, authorized to transfer and convey upon the terms and conditions set forth in the application and exhibits thereto, all of their plant and property and other assets to General Telephone Company of Ohio. It is further

ORDERED, that Applicant, General Telephone Company of Ohio, shall record the plant and property purchased from Ohio Consolidated Telephone Company and The Chesapeake Telephone Company on its books at their respective book values, and its earned surplus shall be the sum of the earned surplus of the three companies. It is further

ORDERED, that Applicant, General Telephone Company of Ohio, be, and hereby it is, authorized to issue to General Telephone Corporation 626,506 shares of its no par common stock with the stated value of $5.00 per share, or an aggregate issue price of $3,132,500, in exchange for all the issued and outstanding capital stock of Ohio Consolidated Telephone Company having a stated value of $3,000,030 and The Chesapeake Telephone Company having a stated value of $132,500. It is further

ORDERED, that Applicant, said General Telephone Company of Ohio, be, and hereby it is, authorized to issue to General Telephone Corporation, 809,216 shares of its no par common capital stock at a stated value of $5.00 per share, or an aggregate stated value of $4,046,080, and to sell the same to General Telephone Corporation for not less than the stated value thereof, the proceeds of which shall be used to retire certain demand notes. It is further ____ .

ORDERED, that Applicant, General Telephone Company of Ohio, be, and hereby it is, authorized to issue its First Mortgage Bonds, 4¼% Series due 1978 in the aggregate principal amount of $4,986,000 in ·exchange for all of Ohio Consolidated Telephone Company's outstanding bonds in a like principal amount. It is further

ORDERED, that Applicant, General Telephone Company of Ohio, be, and hereby it is, authorized to issue its First Mortgage Bonds, 4¼% Series due 1988, in the aggregate principal amount of $4,000,000 and to sell the same at private sale for not less than the principal amount thereof, the proceeds of which shall be used to retire certain short term notes and advancements. It is further

ORDERED, that Applicant, General Telephone Company of Ohio, be and hereby it is, authorized to issue and sell 110,000 shares of its Cumulative Preferred Stock without par value at a stated value of $25.00 per share, aggregating a stated value of $2,750,000 - - and to sell the same at private sale for not less than the stated value thereof—that the proceeds of said preferred stock shall be used to retire short term notes and advancements to reimburse applicant's treasury and to provide applicant with funds for construction purposes. It is further

ORDERED, that Applicant, General Telephone Company of Ohio, pay the expenses of issue and sale of said securities as may be fixed by its Board of Directors from the proceeds of the treasury. It is further

ORDERED, that since the subject application relates to purchase, sale and dissolution, and not to merger within the meaning of §4905.49 R. C., that forthwith upon the exercise of the authority granted herein Applicants, Ohio Consolidated Telephone Company and The Chesapeake Company shall file with this Commission notices of withdrawal of their respective tariffs, and concurrently therewith Applicant, General Telephone Company of Ohio, shall file with this Commission notices of adoption of the tariff schedules of Applicants, Ohio Consolidated Telephone Company and The Chesapeake Telephone Company; regardless of the nature of the subject transaction as hereinbefore distinguished, the Commission has given due consideration to the valuation of the property of the within Applicants as evidence by the book entries hereinbefore authorized. It is further

ORDERED, that nothing herein shall be binding upon this Commission in any future proceedings involving rates or service, nor shall anything herein set forth be construed to imply a consent to, or authorization of any diminution of service or increase in rates within the territory now served by means of said property, especially in view of the fact that in order to preserve the status quo with respect to the rates and charges in the exchanges heretofore served by the Consolidated and Chesapeake Companies, there will exist after the effective date of this order differentials in rate structure within the expanding operating territory of the surviving Applicant company. The Commission being of the opinion that said differentials, as they now exist, and may continue to exist for a reasonable future period of time, are not discriminatory and are in the public interest and do not constitute special rates or unreasonable preferences or advantages within the meaning of §§4905.33 and 4905.35 R. C., the law of Ohio making provisions for rate adjustments and prescribing the procedures therefor; accordingly, it being assumed that when, as, and if, further rate adjustments become necessary, as management of the applicant surviving company shall determine, these differentials may be eliminated. It is further

ORDERED, that Applicant, said Ohio Consolidated Telephone Company, file its final annual report with the Commission. It is further

ORDERED, that Applicant, said The Chesapeake Telephone Company, file its final annual report with this Commission. It is further

ORDERED, that jurisdiction be, and hereby the same is, retained over this proceeding for the purpose of making a detailed examination of Applicants' uncapitalized capitalizable expenditures. It is further

ORDERED, that nothing herein set forth shall be construed to imply any guaranty or obligation as to said common capital stock, said preferred stock, or dividends thereon, or said bonds, or interest thereon, on the part of the The State of Ohio. It is further

ORDERED, that the authority herein granted may be exercised immediately.

THE PUBLIC UTILITIES COMMISSION OF OHIO
EVERETT H. KRUEGER, Jr., Chairman
RALPH A. WINTER
EDWARD J. KENEALY

Entered in the Journal                    COMMISSIONERS
May 29, 1958.

We further find as part of the testimony of Mr. Vrooman, a Bill of Sale from Ohio Consolidated Telephone Company to General Telephone Company of Ohio, which is Exhibit 1, which is important herein. The Court will recite a large part of this **Bill of Sale,** which reads;

KNOW ALL MEN BY THESE PRESENTS: That OHIO CONSOLIDATED TELEPHONE COMPANY, a corporation—the Grantor, for the consideration of One Dollar ($1.00) and other valuable considerations, the receipt of which is hereby acknowledged, to it paid by GENERAL TELEPHONE COMPANY OF OHIO, a corporation—the Grantee, and in further consideration of the assumption by the Grantee of all the liabilities of the Grantor, all of the hereinbelow described properties being distributed to the Grantee as sole stockholder of the Grantor in complete liquidation of the Grantor, does hereby grant, bargain, sell, transfer and deliver unto the Grantee, its successors and assigns, all of its personal property of every kind and description, and being the property now owned by OHIO CONSOLIDATED TELEPHONE COMPANY and used by it in connection with the operation of telephone plant, exchanges, properties and systems within the State of Ohio in the Counties of Auglaize, Belmont, Brown, Clermont, Clinton, Fairfield, Fayette, Franklin, Greene, Guernsey, Harrison, Highland, Hocking, Jackson, Jefferson, Licking, Mercer, Muskingum, Paulding, Perry, Pickaway, Pike, Ross, Scioto, Shelby, Van Wert, and Warren, and serving the following municipalities and/or communities in that State: Adelphi, Adena, Ashville, Atlanta, Baltimore, Bannock, Basil, Blanchester, Bloomfield, Bloomington, Bradley, Brady, Brilliant, Buena Vista, Byesville, Cadiz, Cambridge, Caretown, Carthagena, Cassella, Centerfield, Chickasaw, Circleville, Clarksville, Commercial Point, Convoy, Crabapple, Cranberry Prairie, Cuba, Derbyville, Dillondale, Dixon, Dunglen, Duvall, East Cadiz, East Monroe, Elmwood, Emerson, Farmers Station, Flushing, Fox, Franklin Furnace, Friendship, Fruitdale, Georges Run, Germano, Greenfield, Harrisville, Haynes, Highland, Holloway, Jewett, Junction, Kipling, Lafferty, Laurelville, Leesburg, Lees Creek, Leistville, Lucasville, Lumberton, Lyndon, Marie Stein, Martinsville, McDermott, Melvin, Midland, Millersport, Minford, Morrison, Moulton, Mount Pleasant, New Alexandria, New Antioch, New Athens, New Boston, New Bremen, New Concord, New Rumley, New Salem, New Vienna, North Salem, Ogden, Otway, Piedmont, Piney Fork, Pleasant Grove, Pleasantville, Portsmouth, Port William, Ramsey, Rarden, Rayland, Reesville, Ringgold, Rix Mills, Robins, Robtown, Robysville, Rock Hill, Rushtown, Sabina, Saint Rosa, Scio, Scioto Furnace, Sciotoville, Sebastian, Short Creek, Sligo, Smithfield, South Bloomfield, South Bloomingville, South Perry, South Salem, South Webster, St. Marys, Tarlton, Thurston, Tiltonsville, Ulster, Uniontown, Unionvale, Warranton, Warrentown, Watheys, Westboro, West Portsmouth, Wheelersburg, Williamsport, Wilmington, York and Yorkville, or elsewhere, and comprising all of the personal property of the grantor, wherever situated, together with all telephone and/or telegraph lines, stations, exchanges, wires, cables, conduits, equipment, instruments, appliances, tools, leases, right-of-way, privileges, ordinances, permits, easements, and other property of any kind in any wise pertaining to said plant, exchanges, properties and systems, including without limitation:

All plants, shops, laboratories, exchanges, office buildings and other structures and the equipment therefor, machinery, engines, boilers, dynamos, generators, conduits, pipes, connections, poles, wires, cables. overhead and underground constructions, switchboards, main frames, brackets, braces, guy wires, guy stubs, drop wires, transmitters, receivers, microphones, instruments, tools, implements, apparatus, supplies, furniture, chattels, municipal and other franchises, and any and all other property, devices or rights related to the dispatch, transmission, reception or reproduction of messages, communication, intelligences, signals, light, vision or sound by electricity or otherwise; all leases, leaseholds, telephone, radio, heat, light, gas, power and water contracts, easements, servitudes, licenses, permits, franchises, privileges, immunities and rights-of-way; and

All cash, bonds, stocks, obligations and other securities, together with all accounts and bills receivable, judgments and other evidences of indebtedness and all claims and rights of actions;

TO HAVE AND TO HOLD the same unto the Grantee, its successors and assigns forever.

And the Grantor hereby covenants with the Grantee, its successors and assigns, that the Grantor is the lawful owner of all of said personal property of every kind and description herein conveyed to the Grantee, and has good right to convey the same as aforesaid, that the same is free and clear from all encumbrances whatsoever and that the Grantor will warrant and defend the same against all lawful claims whatsoever.

This Bill of Sale is executed pursuant to the authority granted by The Public Utilities Commission of Ohio in an order dated May 29, 1958, in Case No. 27,787 on the dockets of said Commission.

This Bill of Sale may be simultaneously executed in several counterparts, and all said counterparts, executed and delivered each as an original, shall constitute but one and the same instrument.

IN WITNESS WHEREOF, OHIO CONSOLIDATED TELEPHONE COMPANY in pursuance of a resolution adopted by its Board of Directors on the 16th day of June, 1958, has hereunto caused its corporate seal to be affixed and those presents to be subscribed by its President and Secretary this 20th day of June, 1958.

OHIO CONSOLIDATED TELEPHONE COMPANY

By /s/ C. E. Williams

C. E. Williams, President

Signed and Acknowledged
in the presence of:

/s/ H. J. Vrooman,

s/ Sidney D. Griffith

H. J. Vrooman, Secretary.

Sidney D. Griffith

s/ Cyril Talbot, Jr.

Cyril Talbot, Jr.

State of New York )
County of New York. ) SS

BE IT REMEMBERED, That on this 20th day of June, 1958, before me, the subscribed, a Notary Public in and for said County, personally appeared C. E. Williams, President and H. J. Vrooman, Secretary of OHIO CONSOLIDATED TELEPHONE COMPANY, the corporation which executed the foregoing instrument, who acknowledged that the seal affixed to said instrument is the corporate seal of said corporation; that they did sign and seal said instrument as such President and Secretary in behalf of said corporation and by authority of its Board of Directors; and that said instrument is their free act and deed individually and as such President and Secretary and the free and corporate act and deed of OHIO CONSOLIDATED TELEPHONE COMPANY.

IN TESTIMONY WHEREOF, I have hereunto subscribed my name and affixed my official seal, on the day and year last aforesaid.

/s/ Ethel E. Kelley

Notary Public
ETHEL E. KELLEY
Notary Public, State of New York

- - - - -

Commission expires March 30, 1960.

x  x  x  x  x  x  x  x  x  x  x  x  x  x  x

Let us then examine the time history of the proceedings and the details.

At some unnamed date, prior to May 29, 1958, a Joint Application was filed with The Public Utilities Commission of Ohio, for authority to General Telephone Company of Ohio to acquire all the plant, property and assets of Ohio Consolidated Telephone Company and The Chesapeake Telephone Company, and for the latter two to sell to the former the same items, all three being owned by General Telephone Corporation, which authority was granted by Order, dated May 29, 1958, by The Public Utilities Commission of Ohio, the Order is Exhibit 2 in this matter. The Court finds that the proper proceedings were taken under §4905.48 R. C., and related sections, and holds that the Exhibit 2 is proper and correct.

After this approval by the Commission, many steps had to be taken.

Exhibit 6, dated June 13, 1958, Unanimous Consent to Dissolution of Ohio Consolidated Telephone Company, signed by General Telephone Company of Ohio, the sole stockholder of the former. The Court finds that the same was signed and filed under §1701.54 R. C., and is correct and proper.

Exhibit 4. Resolution as to Certificate of Dissolution, adopted at special meeting of Board of Directors of Ohio Consolidated Telephone Company, on June 16, 1958, that after receipt of duly executed consent by holder of all outstanding stock, the corporation be dissolved, certificate of dissolution be filed, documents to be executed, notice to be given. The Court finds that the same was in compliance with §1701.86 R. C., and is correct and proper.

Exhibit 5. Resolution by Directors of Ohio Consolidated Telephone Company, on June 16, 1958, that upon the filing of such Certificate of Dissolution (as authorized), with the Secretary of State, that there be

distributed to General Telephone Company Ohio (the holder of all the outstanding stock of the Company), upon receipt from the latter of an agreement to assume all liabilities of Ohio Consolidated Telephone Company, all of the assets of same, and the officers were directed to execute such deeds, assignments, bills of sale, and other instruments as might be necessary. The Court finds that such Resolution was a proper one in the dissolution of the Company, under §1701.88 (D) R. C., and also had previously been approved by The Public Utilities Commission of Ohio. This Resolution also was adopted at the Special Meeting of Board of Directors on June 16, 1958.

Exhibit 3, is the Certificate of Dissolution of Ohio Consolidated Telephone Company, executed on behalf of the corporation, dated June 18, 1958, in accordance with Resolution of Board of Directors of June 16, 1958, and was filed in the Office of Secretary of State of Ohio, on June 20, 1958, Roll B, 53, Frame 525, which the Court finds is in accordance with §1701.86 (F) and (H) R. C., and thereupon under §1701.86 (I) R. C., the corporation, as such, was dissolved. The certificate of Dissolution was certified by the Secretary of State the same date, June 20, 1958, so the Court must presume that the necessary accompanying papers and certificates were also filed with the Certificate of Dissolution.

Exhibit 1, is the Bill of Sale, from Ohio Consolidated Telephone Company, to General Telephone Company of Ohio, of all its assets, upon assumption of the liabilities of the former by the latter, the same is dated June 20, 1958, and was authorized by the Resolution of June 16, 1958, Exhibit 5, and in accordance with the authorization of The Public Utilities Commission of Ohio, of May 29, 1958, Exhibit 2, and the Court finds the same to be a valid Bill of Sale.

x   x   x   x   x   x   x   x   x   x   x   x   x   x   x

The Court holds that the fact that the Bill of Sale does not mention Good-Will, which is specifically mentioned, as part of a corporation that may be transferred, under §1701.76 R. C., is not part of the question now before the Court. The Court further holds that the question of a good-will of a public utility that has a monopoly in its area, whether or not the same does exist, is not before the Court at this time, on this motion.

The Court further holds that the question of the valuation placed upon this law-suit, in the transfer of all of the assets from Ohio Consolidated Telephone Company to General Telephone Company of Ohio, if any such valuation there was, is not a question before this Court at this time, although the same may become important later, to either the plaintiff or to the defendants.

The Court finds that it was the intention of the Joint Application filed with the Public Utilities Commission to consolidate all operations of the three companies in and under the name of General Telephone Company of Ohio, and the said Commission ordered Ohio Consolidated Telephone Company to file its final annual report. That it was the intent of the Commission that Ohio Consolidated Telephone Company cease any and all operations of every kind, after the orders as to transfers, deeds, etc., were carried out. The order of the Commission expressly stating: (Exhibit 2)

ORDERED, that Applicant, General Telephone Company of Ohio, be, and hereby it is, authorized to acquire upon the terms and conditions set forth in the application and exhibits thereto all of the plant, and property and other assets and to assume the liabilities of Ohio Consolidated Telephone Company, and The Chesapeake Telephone Company, it is further

ORDERED, that Applicants, Ohio Consolidated Telephone Company and The Chesapeake Telephone Company, be, and hereby are, authorized to transfer and convey upon the terms and conditions set forth in the application and exhibits thereto, all of their plant and property and other assets to General Telephone Company of Ohio.

Just what were the exhibits is not shown in the matter now before the Court; the same may or may not be important in the trial upon the merits in this cause.

The Resolution of the Board of Directors in pursuance thereof stated (Ex. 5)

—the proper officers of this Company are hereby authorized and directed to distribute to General Telephone Company of Ohio—all the properties, businesses, assets, privileges, claims, rights and franchises of this Company, upon receipt from General Telephone Company of Ohio of an agreement to assume the liabilities of this Company, and such officers are hereby authorized in connection with such distribution to execute and deliver, in the name and on behalf of this Company, such deeds, assignments, bills of sale and other instruments as they shall deem appropriate or as General Telephone Company of Ohio may request.

The Bill of Sale (Exhibit 1), stated that Ohio Consolidated Telephone Company did grant, bargain, sell, transfer and deliver unto Ohio Consolidated Telephone Company of Ohio,

"all of its personal property of every kind and description—all plants, shops, laboratories, exchanges, office buildings and other structures and the equipment thereof" and "all cash, bonds, stocks, obligations and other securities, together with all accounts and bills receivable, judgments and other evidences of indebtedness and all claims and rights of action."

It was the intent of the Directors to completely liquidate the Ohio Consolidated Telephone Company, "during the current taxable year" (Exhibit 4) and nothing was to be left that was not transferred to General Telephone Company of Ohio.

Counsel for Defendants objected on the ground that "this alleged three million dollar item wasn't considered worthy of mention." The Court has no way of knowing what value, if any, was placed upon "this three million dollar item" in the distribution of assets in kind, and that question is not before this Court at the present time, but may be in the trial of the merits of this cause.

The Certificate of Dissolution of Ohio Consolidated Telephone Company was filed with the Secretary of State of Ohio, on June 20, 1958; the Bill of Sale was executed the same date. (Exhibits 3 and 1.) Under §1701.86 (I) R. C.

"Upon the filing of a certificate of dissolution and such accompanying documents, the corporation shall be dissolved."

The Court finds that on and after June 20, 1958, the corporation Ohio Consolidated Telephone Company ceased to exist, and everything that it had owned was then possessed by General Telephone Company of Ohio (which had been the sole stockholder of Ohio Consolidated Telephone Company for some undisclosed period before that), and that as such transferee, this lawsuit, whatever might be its value, was then the legal property of the said General Telephone Company of Ohio (of course, as sole stockholder, it had actually been the owner of this lawsuit before June 20, 1958).

The Court finds that the motion of General Telephone Company of Ohio, for an Order substituting it, General Telephone Company of Ohio, as party plaintiff, in the place of Ohio Consolidated Telephone Company, is well taken, and the same is sustained, the style of the case to continue the same under §2307.03 R. C. The Court finds that said motion should have been made as soon after June 20, 1958, as possible, but such delay is not fatal to such substitution. Such substitution is made under the provisions of §2307.25 R. C.

Therefore, this cause having been heard upon the Motion of General Telephone Company to be substituted as party plaintiff in the place of Ohio Consolidated Telephone Company, and it appearing to the Court from the evidence adduced that General Telephone Company of Ohio acquired all the assets and choses in action or claims and rights of action, of Ohio Consolidated Telephone Company, on June 20, 1958, in accordance with the statutes of Ohio, and that as such the General Telephone Company of Ohio is the successor in interest of the former and original plaintiff, Ohio Consolidated Telephone Company, it is now

ORDERED, ADJUDGED AND DECREED by this Court of Common Pleas of Clinton, County, Ohio, that the Motion of General Telephone Company of Ohio to be substituted as Party Plaintiff herein be granted, and it is further

ORDERED, ADJUDGED AND DECREED that General Telephone Company of Ohio be and hereby is substituted as Party Plaintiff herein, in place of Ohio Consolidated Telephone Company, the original named Plaintiff herein, under the provisions of §2307.25 R. C.; however, the style of the case shall remain the same as this case was originally styled when filed, in accordance with the provisions of §2307.03 R. C.; the substituted Plaintiff to be subject to all orders heretofore made herein, since the original filing of this case on December 19, 1957, and to be subject to all orders hereinafter made herein, by this Court of Common Pleas, and it is further

ORDERED, ADJUDGED AND DECREED that said Order of Substitution of Part Plaintiff herein shall not in any way change the relation of the parties herein, as to Party Plaintiff and Parties Defendant, and said Order of Substitution shall in no way relieve the substituted Plaintiff, General Telephone Company of Ohio, from complying with the orders of this Court of Common Pleas of Clinton County, Ohio, as heretofore made herein, or as may be hereinafter made, in any matter affecting this cause.

To all of which, the several Defendants, by counsel, except.

OHIO CONSOLIDATED TELEPHONE COMPANY, Plaintiff, v.
COMMUNICATIONS WORKERS OF AMERICA (AFL-CIO) et, Defendants.

No. 18270.   Decided October 21, 1959.

## OPINION

By SWAIM, J.

This is an action in damages, Plaintiff alleges a conspiracy on part of the Defendants, in and during a strike, to injure and damage plaintiff's property, etc., and prays for judgment for $3,000,000.00, for alleged damage to plaintiff's property and business for and from acts alleged to have been committed by or through defendants. This cause was filed in this Court on December 19, 1957, and summons was issued to Sheriffs of Cuyahoga County, Ohio, of Guernsey County, Ohio, of Scioto County, Ohio, and of Clinton County, Ohio; the summons were served upon the several designated persons, representing the defendants, according to the separate Returns of the said four Sheriffs.

On January 18, 1958, by Entry herein, the Defendants were granted leave to plead by February 7, 1958, on which date, the several Defendants (by their counsel, Messrs. Waite, Schindel, Bayless & Schneider, of Cincinnati, Ohio), filed a series of Motions 1 to 48, inclusive (with several sub-divisions in some), to Strike Words and Language from Petition, and Series of Motions 49 to 56, inclusive (with several sub-divisions in some) for an Order to Require Plaintiff to Make its Petition Definite and Certain. The several motions contained reasons, and the statutory authority was noted at the end thereof.

On July 15, 1958, the Plaintiff, by counsel, filed a Memorandum Contra Motion to Strike and Memorandum Contra Motion to Make Petition Definite and certain; the whole being in four (4) pages. This Memorandum was filed by same counsel who filed the Petition for the Plaintiff, to-wit: Messrs. Power, Griffith & Jones, of Columbus, Ohio.

On November 10, 1958, the Defendants, by their counsel, filed Memorandum in Support of Motions to Strike from the Petition and to Make Definite and Certain the Petition, in Nine (9) pages, and also on same date, the Defendants, by counsel, filed Reply Memorandum in Support of Motions to Strike from the Petition, and to Make Definite and Certain the Petition, in Seven (7) pages.

On December 12, 1958, the Plaintiff, by counsel, filed a Supplemental Brief Contra Motion to Strike and Make More Definite and Certain.

On December 17, 1958, this Court of Common Pleas ruled on said Motions, overruling part of the said Motions to Strike from Petition, and part of said Motions to require Petition to be made Definite and Certain, and sustaining part of the said Motions to Strike from Petition, and part of said Motions to require Petition to be made Definite and Certain.

On December 31, 1958, the finding of the Court, of December 17, 1958, was entered as a Journal Entry, and thereupon (Journal 104, page 249), the Court overruled parts of said Motions, and sustained parts of said Motions, both as to the striking words and language from the Petition, and as to the requiring Plaintiff to make Petition Definite and Certain, and in said Journal Entry, the Court ordered as follows:

"It is, Therefore, Considered and Ordered by the Court that plaintiff comply in all respects with the above rulings of this Court and make its petition definite and certain by filing its amended petition herein on or before the 15th day of February, 1959."

In the meantime, at some unnamed date, prior to May 29, 1958, a Joint Application was filed with the Public Utilities Commission of Ohio, for authority to General Telephone Company of Ohio, to acquire all the plant, property and assets of Ohio Consolidated Telephone Company and The Chesapeake Telephone Company, and for the latter two to sell to the former the same items, all three being owned by General Telephone Corporation, which authority was granted by Order of said Commission, on May 29, 1958 (the order being Exhibit 2, in proceedings heretofore had herein).

On June 13, 1958, there was executed, a Unanimous Consent to dissolution of Ohio Consolidated Telephone Company, signed by General Telephone Company of Ohio, the sole stockholder of the former. (This consent being Exhibit 6, in proceedings heretofore had herein.)

On June 16, 1958, the Board of Directors of Ohio Consolidated Telephone Company, at a special meeting, passed a Resolution to Dissolve the said Company. (This Resolution being Exhibit 4, in proceedings heretofore had herein.)

On the same date, June 16, 1958, the Directors of said Ohio Consolidated Telephone Company, adopted Resolution that upon filing Certificate of Dissolution with Secretary of State, there be distributed to General Telephone Company of Ohio (the holder of all the outstanding stock of the Company), upon receipt from latter of an agreement to assume all the liabilities of Ohio Consolidated Telephone Company, all of the assets of the same, and the officers were directed to execute such deeds, assignments, bills of sale and other instruments as might be necessary (this Resolution being Exhibit 5, in proceedings heretofore had herein).

On June 20, 1958, there was filed in Office of Secretary of State of Ohio, the Certificate of Dissolution of Ohio Consolidated Telephone Company, in accordance with Resolution of Board of Directors of June 16, 1958; and the same was certified by the Secretary of State of Ohio, on same date, June 20, 1958; (this being Exhibit 3, in proceedings heretofore had herein).

On June 20, 1958, there was executed by proper officials of Ohio Consolidated Telephone Company, a Bill of Sale from it to General Telephone Company of Ohio, of all its assets, upon assumption of liabilities of former by latter, as authorized by Resolution of Board of Directors of June 16, 1958, and in accordance with the authorization of The Public Utilities Commission of Ohio, on May 29, 1958 (Case No. 27,787 of said Commission) (which Bill of Sale is Exhibit 1, in proceedings theretofore had herein).

The Court has found that thereupon, the Ohio Consolidated Telephone Company ceased to exist, and all of its assets were transferred to General Telephone Company of Ohio, as of that date, if not before,

as the latter was the sole stockholder of the former, from some unnamed date, prior to May 29, 1958.

———  ——  ——  ——  ——  ——  ——  ——  ——  ——  ——  ——  ——  ——  ——

On February 13, 1959, there was filed a Motion requesting the Court for an Order substituting General Telephone Company of Ohio, as part Plaintiff herein, for reason that it was successor of Ohio Consolidated Telephone Company, the same being signed by the attorneys who filed the original petition, to-wit: Power, Griffith & Jones, plus an additional attorney, Chester P. Fitch, whose name appears on one of the memorandums on behalf of Plaintiff, as to the Motions. This was filed within the Rule Day of February 15, 1959, as fixed in the Journal Entry of December 31, 1958, Journal 104, page 249.

The Motion for Substitution was accompanied by Journal Entry prepared by counsel for plaintiff, and also was accompanied by an Amended Petition, signed by same counsel, for General Telephone Company of Ohio, neither of which was then docketed by the Clerk of Courts, although the Motion for substitution of party plaintiff, was then docketed, within the Rule Day as fixed on December 31, 1958.

The Court then took the Motion under advisement, and extended the Rule Day, until such time as the Court passed upon the Motion, as is shown by the Entry of October 6, 1959, Nunc Pro Tunc, as of February 13, 1959, Journal 105, page 313.

The matter was argued by counsel for plaintiff and counsel for defendants, on June 19, 1959, and the Court extended the Rule Day until such time as the Court passed upon the Motion for Substitution of Party Plaintiff, and also fixed the Rule Day for Motion, Demurrer or Answer, as is shown in the Entry of October 6, 1959, Nunc Pro Tunc, as of June 19, 1959, Journal 105, page 314.

This Court did find on October 6, 1959, that the Motion of General Telephone Company of Ohio to be substituted as Party Plaintiff was well taken, and granted the Motion, and ordered the substitution of such Company, as the party Plaintiff (Journal 105, page 318), and found that by the Bill of Sale of June 20, 1958, the said General Telephone Company of Ohio had been the owner of this lawsuit from said date, if. not before, as it was the sole stockholder of Ohio Consolidated Telephone Company, the original Plaintiff herein. The Court further found that the Motion for substitution should have been made as soon after June 20, 1958, as possible, but that such delay was not fatal. The Court further found that the substituted plaintiff was subject to all orders heretofore made herein, since the original filing of this case, and to be subject to all orders hereinafter made herein, and that the substitution did not relieve the substituted plaintiff from complying with the orders of this Court heretofore made herein, or hereinafter made herein.

Thereupon, upon the Granting of said Motion and the ordering of the substitution of the Party Plaintiff, the Clerk of Courts filed the Amended Petition, of General Telephone Company, of Ohio, as successor in interest of this cause of action, on October 6, 1959.

———  ——  ——  ——  ——  ——  ——  ——  ——  ——  ——  ——  ——  ——  ——

The same attorneys represented Ohio Consolidated Telephone Company, the original Plaintiff, who now represent General Telephone Com-

pany of Ohio, the substituted Plaintiff. The substituted Plaintiff, General Telephone Company of Ohio, acquired all of the assets, including this lawsuit, of Ohio Consolidated Telephone Company, on June 20, 1958, at which time the Motion of the Defendants to the Petition of the original Plaintiff was still before this Court.

The Supplemental Brief Contra Motion to Strike and Make More Definite and Certain, as filed herein on December 12, 1958, was filed by the same counsel (without designation anywhere in the Supplemental Brief as to whom they then represented) as filed the original petition and as now represent the substituted Plaintiff; which date of December 12, 1958, was after the said General Telephone Company of Ohio acquired all of the assets of the said Ohio Consolidated Telephone Company, on June 20, 1958.

It is law that an attorney's notice or knowledge of facts affecting the rights of his client will be considered notice to the latter, and notice to the attorney of a party to a legal proceeding respecting matters arising and orders made during the course of litigation is imputable to such party.

There can be no question but that the substituted Plaintiff, General Telephone Company of Ohio, was bound by the entry of December 31, 1958, as to what should be done in an Amended Petition herein. It had the same counsel as the original Plaintiff, it took the lawsuit subject to any and all orders that would apply to the original Plaintiff. There was active participation by the same counsel, in this lawsuit, after the date of June 20, 1958, and the substituted plaintiff, actually owning this lawsuit after June 20, 1958, is bound by the entry of December 31, 1958, as much as the original Plaintiff would have been bound by it, if it had still owned this lawsuit on December 31, 1958.

Did General Telephone Company of Ohio comply with the orders of this Court, as entered on December 31, 1958, Journal 104, page 249, or did it fail to comply with the same in its Amended Petition herein?

Let us then examine the original Petition, the entry of December 31, 1958, Journal 104, page 249, and the Amended Petition, to ascertain if the Amended Petition did "comply in all respects with the - - rulings of this Court and make its petition definite and certain."

— — — — — — — — — — — — — — — — — — — — — — — —

The Plaintiff claims damages for alleged injuries to property, through conspiracy; and claims in First Memorandum contra Motion to Make Definite and Certain, that the "gist of the action for conspiracy is the damage to the plaintiff and not the conspiracy itself."

The Plaintiff alleged in the Petition (omitting the parts stricken out after ruling of the Court thereon), as follows, as to the damages:

In the Sixth paragraph thereof, as found on pages 2 and 3 of Petition: "—the parties thereto—embarked on a program of wanton, wilful and malicious misconduct and property damage. Said parties have procured, instigated and carried out the damaging of plaintiff's lines and buildings, out wires and cables, and have otherwise damaged and destroyed plaintiff's properties in Ohio and elsewhere."

The Plaintiff further alleged in the Seventh paragraph of the Petition, on page 3 thereof, as to damages, as follows:

"Plaintiff alleges that its said properties have been damaged and destroyed wilfully and maliciously in an amount in excess of Five Hundred Thousand ($500,000.00) Dollars by the Defendant Unions, their agents, members and representatives acting in the course of and in furtherance of the - - conspiracy aforesaid—"

The Defendants filed Motions asking that the Plaintiff be required to make the Petition Definite and Certain, as to allegations of damages, and the several acts, particularly Motions 55 and 56, the parts of which the Court sustained in its Entry of December 31, 1958, Journal 104, page 249, as follows:

"Defendants, by their counsel, move the court for an order—requiring plaintiff to make its petition definite and certain in the following respects, to-wit: - - -

TO MAKE THE PETITION DEFINITE AND CERTAIN, SO AS TO ENABLE DEFENDANTS PROPERLY TO PLEAD AND DEFEND BY ALLEGING THE FOLLOWING: - - - -

55. The following facts as to each illegal or overt act, of the alleged conspirators causing the damage to plaintiff's property, upon which Plaintiff relies:

(a) Month, day and year of its occurrence;

(b) Place where it occurred;

(d) Nature and substance of the occurrence.

56. Each item of damages separately stated, so as to give defendants the opportunity to investigate and present evidence upon such item and to contradict any evidence offered by Plaintiff, stating the following with reference to each such item of damages:

(a) Describe and identify the property damaged or destroyed, giving its location;

(b) State the date of such damage or destruction;

(c) State the nature or character of such damage or destruction; - -

(e) State the amount of damages sustained, or facts which afford a basis upon which the damages may be estimated."

In the opinion of the Court of December 17, 1958, the Court said:

"Defendant's Motion to strike and to make definite and certain in 56 branches will be disposed of as follows: - -

The following branches will be sustained: - - - - - 55a, 55b, 55d, 56a, 56b, 56c, 56e."

In the Journal Entry of December 31, 1958, Journal 104, page 249, the Court says:

"This day this matter came on to be heard upon defendants' motion to strike from the petition and to make the petition definite and certain, consisting of 56 branches, was argued by counsel for plaintiff and counsel for defendants, and was submitted to the Court:

Upon consideration whereof, the Court finds as follows:—

(3) That the following branches of the motion are well taken and each of them should be and hereby is sustained, to-wit: - -

55a, 55b, 55d, 56a, 56b, 56c and 56e.

It is, Therefore, Considered and Ordered by the Court that Plaintiff comply in all respects with the above rulings of this Court and make its

petition definite and certain by filing its amended petition herein on or before the 15th day of February, 1959."

Did the Plaintiff, or the substituted Plaintiff, "comply in all respects with the above rulings of this Court," in the Amended Petition?

The Court finds that the Amended Petition, in several parts, in its allegations as to alleged damage and damages, from alleged conduct of defendants, is quite similar to the original Petition, with only a change of wording from "plaintiff's" to "Consolidated's."

The allegations, in such parts, are still in general language only, and the Court will copy from the original petition of the original Plaintiff, Ohio Consolidated Telephone Company, and from the Amended Petition of the substituted Plaintiff, General Telephone Company of Ohio, omitting from the Petition the words that this Court of Common Pleas ordered stricken from the same in the Entry of December 31, 1958, Journal 104, page 249.

— — — — — — — — — — — — — — — — — — — —

The Plaintiff (the original Plaintiff), Ohio Consolidated Telephone Company, in the Sixth (6th) paragraph, as found on Pages 2 and 3 of the Petition, in referring to the Defendants, said:

"- - the parties thereto—embarked on a program of wanton, willful and malicious misconduct and property damage. Said parties have procured, instigated and carried out the damaging of plaintiff's lines and buildings, cut wires and cables, and have otherwise damaged and destroyed plaintiff's properties in Ohio and elsewhere."

The substituted Plaintiff, General Telephone Company of Ohio, in the Seventh (7th) paragraph, as found on page 3, of the Amended Petition, in referring to the Defendants, says:

"—the parties thereto embarked on a program of wanton, wilful and malicious misconduct and property damage. Said parties have procured, instigated and carried out the damaging of Consolidated's lines and buildings, cut wires and cables, and have otherwise damaged and destroyed Consolidated's properties in Ohio and elsewhere.

— — — — — — — — — — — — — — — — — — — —

The Plaintiff (the original Plaintiff), Ohio Consolidated Telephone Company, in the Seventh (7th) paragraph, as found on page 3, of the Petition, said:

"Plaintiff alleges that its properties have been damaged and destroyed wilfully and maliciously in an amount in excess of Five Hundred Thousand ($500,000.00) Dollars by the defendant Unions, their agents, members and representattives - - -"

The Substituted Plaintiff, General Telephone Company of Ohio, in the Eighth (8th) paragraph, as found on page 3 of the Amended Petition says:

"Plaintiff alleges that Consolidated's properties have been damaged and destroyed wilfully and maliciously in an amount in excess of Five Hundred Thousand ($500,000.00) Dollars by the defendant Unions, their agents, members and representatives - - -"

— — — — — — — — — — — — — — — — — — — —

Certainly, even the counsel for Plaintiff (the now substituted Plaintiff), would not even try to claim that this exact repetition of the exact

wording of the Petition (with the slight change from "Plaintiff's" to "Consolidated's") is a compliance with the ruling and order of the Court of December 31, 1958. The Court holds that this repetition is not a compliance of any kind with the Order of this Court of December 31, 1958, Journal 104, page 249, and that the same is not even an attempt to comply with the Court's rulings.

The Court finds several paragraphs in the Amended Petition of the substituted Plaintiff, General Telephone Company of Ohio, which have no particular reference to any paragraph in the original Petition, of Ohio Consolidated Telephone Company. The Court will later refer to them, and quote them, many parts being capitalized by the Court, which parts are not capitalized in the Amended Petition; the capitalized parts are for particular reference later therein.

It is not alleged particularly that these alleged acts are the acts of the Defendant unions, their agents, members and representatives, in any of these additional paragraphs, unless the substituted Plaintiff, General Telephone Company of Ohio, means that the Seventeenth (17th) paragraph, on page 7, of the Amended Petition, refers back to and covers these acts.

Let us then examine this Seventeenth (17th) paragraph as found on page 7 of the Amended Petition:

"Plaintiff says that all of the aforesaid acts of vandalism, intimidation, destruction and violence were performed by defendants and sympathizers and conspirators in carrying out the Union's stated belief that an order for the strike to be effective, telephone service rendered by Consolidated must be curtailed."

We now find an additional class of persons, who were not mentioned in the original Petition, for whose acts, the Plaintiff desires to hold the Defendants liable, that is, the lately mentioned class of sympathizers.

The Court will not go into the technical discussion of this phase of law, and also the phase that many men may be engaged in committing the same sort of crime, each knowing that the others were so engaged, without becoming conspirators.

For the purpose of this entry, this Seventeenth (17th) paragraph on page 7 of the Amended Petition will be taken as referring back to the several paragraphs of the petition, and as charging the several acts to have been performed, as originally stated or claimed or alleged, by the "defendant Unions, their agents, members and representatives."

In several places in the added paragraphs found in the Amended Petition, the substituted Plaintiff, as to time, refers, to

"During the period of the strike, from July 15, 1956, to February 27, 1957," as found in the Twelfth (12th) paragraph of Amended Petition, on page 5, or

"During the period of the strike," as found in the Thirteenth (13th), Fourteenth (14th), and Fifteenth (15th) paragraphs of Amended Petition, as found on page 6, and as found in the Sixteenth (16th) paragraph, as found on page 7 of the Amended Petition, which phrases mean

nothing as to time of acts, alleged to have occurred, as all of the said acts, had been placed between said dates in the Fourth (4th), Fifth (5th) and Sixth (6th) paragraphs of the original petition, which are now the Fifth (5th), Sixth (6th) and Seventh (7th) paragraphs of the Amended Petition, as found on pages 2 and 3 thereof.

Let us then consider these added new paragraphs, to see how the same comply with the Order of this Court of December 31, 1958, Journal 104, page 249.

The substituted Plaintiff, General Telephone Company of Ohio, in the Twelfth (12th) paragraph, as found on pages 5 and 6 of the Amended Petition alleges:

"During the period of the strike, from July 15, 1956, to February 27, 1957, there were approximately six hundred eighty-six discovered cable cuts in the areas served by Consolidated, including five hundred fifty-five in the Portsmouth District, fifteen in the Wilmington District, twenty in the Cambridge District, fifty in the St. Marys District, thirty-nine in the Cadiz District, and seven in the Circleville District. Of those in the Portsmouth District, three hundred eighty-one were in the Portsmouth Exchange, one hundred twenty-one in the Sciotoville Exchange, twenty-seven in the New Boston Exchange, nineteen in the West Portsmouth Exchange, four in the Lucasville Exchange, and three in the Fullerton (Kentucky) Exchange. Of those in the Wilmington District, five were in the Greenville Exchange, three in the Blanchester Exchange, three in the Martinsville Exchange, three in the Leesburg Exchange, and two in the New Vienna Exchange. Of those in the Cambridge District, nineteen were in the Cambridge Exchange, and one in the New Concord Exchange. Of those in the St. Marys District, forty-one were in the St. Marys Exchange, three in the Convoy Exchange, three in the Maria Stein Exchange, and three in the New Bremen Exchange. Of those in the Cadiz District, nine were in the Cadiz Exchange, seven in the Adena Exchange, six in the Tiltonsville Exchange, six in the Dillonvale Exchange, three in the Mt. Pleasant Exchange, two in the Flushing Exchange, two in the Smithfield Exchange, two in the Brilliant Exchange, one in the Holloway Exchange, and one in the Scio Exchange. Of those in the Circleville District, all seven were in the Circleville Exchange.

The substituted Plaintiff, General Telephone Company of Ohio, in the Fourteenth (14th) paragraph, as found on Page six (6) of its Amended Petition says:

"DURING THE PERIOD OF THE STRIKE, CONSOLIDATED'S MOTOR VEHICLES WERE BURNED, SHOT WITH BULLETS, OVERTURNED AND THEIR TIRES WERE SLASHED, WINDOWS AND WINDSHIELDS WERE BROKEN, AND OTHERWISE DAMAGED AND DESTROYED. Such incidents occurred in Portsmouth on or about August 7, 9, 13, 23 and 27, September 18, and October 4 and 11, 1956, AS WELL AS OTHER TIMES."

The substituted Plaintiff, General Telephone Company of Ohio, in

the Fifteenth (15th) paragraph, as found on Page Six (6) of its Amended Petition says:

"DURING THE PERIOD OF THE STRIKE, WINDOWS WERE FREQUENTLY BROKEN IN THE BUILDINGS OWNED BY OR OCCUPIED BY CONSOLIDATED TO THE EXTENT THAT IT WAS ALMOST A DAILY OCCURRENCE, including the Dewey and Albert Exchange Building, the 7th Street Plant Building, the Sciotoville Exchange Building, the New Boston Exchange Building, in Scioto County, the Circleville Exchange Building in Pickaway County, the Adena Exchange Building and the Smithfield Exchange Building in Jefferson County, the Cadiz Exchange Building in Harrison County, AND TO A LESSER EXTENT TO THE OTHER BUILDINGS OF CONSOLIDATED THROUGHOUT TWENTY-THREE COUNTIES OF OHIO. ON SEVERAL OCCASIONS, CONSOLIDATED'S EXCHANGE BUILDINGS WERE BROKEN INTO, DOORS AND WINDOWS WERE BROKEN IN, TELEPHONE AND OTHER EQUIPMENT AND FURNITURE WERE DAMAGED AND DESTROYED,—"

— — — — — — — — — — — — — — — — — — — — — — — —

The substituted Plaintiff, General Telephone Company of Ohio, in the Sixteenth (16th) paragraph, as found on page Seven (7) of its Amended Petition, says:

"DURING THE PERIOD OF THE STRIKE, CONSOLIDATED' TELEPHONE PLANT, INCLUDING ITS POLES, WIRES, STRANDS, CABLES, BOOTHS, INSTRUMENTS, AND OTHER EQUIPMENT WERE CUT, BROKEN, DAMAGED, REMOVED, STOLEN AND CARRIED AWAY AS ALMOST A DAILY OCCURRENCE."

— — — — — — — — — — — — — — — — — — — — — — — —

In no sense of the word, can the Twelfth (12th) paragraph of the Amended Petition, as found on pages 5 and 6 thereof, and as quoted on page 11 of this Entry, be said to comply with the Entry of December 31, 1958, which Order and Entry required the Plaintiff to make its Petition definite and Certain, so as to show, as to particular acts:

55 (a) **Month, day and year of its occurrence.** NOTHING SO SHOWN.

55 (b) **Place where it occurred.** No definite location given for any of the alleged discovered cable cuts, only indefinite locations given.

55 (d) **Nature and substance of the occurrence.** This is given to-wit: cable cuts.

The same items are partially repeated in the following items required to be given.

56 (a) **Describe and identify the property damaged or destroyed, giving its location.** The Amended Petition alleges cable cuts, so the property must have been cable. The location is not so given that the same could be readily ascertained; only a great general location, as "Exchange" is referred to.

56 (b) **State the date of such damage or destruction.** NOTHING GIVEN.

56 (c) **State the nature or character of such damage or destruction.** This is given: "cable cuts."

56 (e) **State the amount of damages sustained, or facts which afford**

a basis upon which the damages may be estimated. NOTHING GIVEN OR ATTEMPTED TO BE GIVEN.

The Court holds that the said Twelfth (12th) paragraph of the Amended Petition does not comply with the Order and Entry of December 31, 1958, Journal 104, page 249, herein.

—  —  —  —  —  —  —  —  —  —  —  —  —  —  —  —  —  —  —

In no sense of the word, can the Fourteenth (14th) paragraph of the Amended Petition, as found on Page 6 thereof, be said to comply with the Entry of December 31, 1958, Journal 104, page 249. This says:

"- - - Consolidated's motor vehicles were burned, shot with bullets, overturned, and their tires were slashed, windows and windshields were broken and otherwise damaged and destroyed. Such incidents occurred—as well as other times."

Let us examine the same with reference to the Entry of December 31, 1958, Journal 104, page 249; as to the particular acts:

55 (a) **Month, day and year of its occurrence.** The Amended Petition states that certain things happened in Portsmouth (Ohio) on certain specified dates, but the particular acts are not identified, on such dates, and then the pleader states AS WELL AS OTHER TIMES. This is distinct failure to comply with the Order of this Court, and is a direct violation of such order.

55 (b) **Place where it occurred.** The paragraph states Portsmouth, and does not state that any such things happened anywhere else, so we must presume that all such acts happened in the City of Portsmouth alone; the exact location therein not being given.

55 (d) **Nature and substance of the occurrence.** The Amended petition runs a number, or series of incidents together, in the same sentence, without any attempt to set up the particular incident, or to show what happened at each particular time.

56 (a) **Describe and identify the property damaged or destroyed, giving its location.** The Amended Petition merely says "Consolidated's motor vehicles," not mentioning whether the same were heavy trucks, pick-up trucks, official passenger cars, or what, and not mentioning the specific damage to each type or types of cars. As to location, apparently, all were in Portsmouth (Ohio), as no other location is given.

56 (b) **State the date of such damage or destruction.** The Amended Petition states that certain general things happened in Portsmouth (Ohio) on certain specified dates, but the particular acts are not identified, on such dates, and then the Amended Petition says: AS WELL AS OTHER TIMES. This is a distant failure to comply with the Order of this Court, and is a direct violation of such order.

56 (c) **State the nature or character of such damage or destruction.** The Amended Petition runs a series or number of acts or incidents together, in the same sentence, without any attempt to set up the various particular incidents, or to show what happened at each particular time.

56 (e) **State the amount of damages sustained, or facts which afford a basis upon which the damages may be estimated.** NOTHING GIVEN OR ATTEMPTED TO BE GIVEN.

The Court holds that the said Fourteenth (14th) paragraph of the

Amended Petition, as found on page 6 thereof, does not comply with the Order and Entry of December 31, 1958, Journal 104, page 249.

In no sense of the word can the Fifteenth (15th) paragraph of the Amended Petition, as found on page Six (6) thereof, be said to comply with the order of this Court, as shown in the Journal Entry of December 31, 1958, Journal 104, page 249.

"- - - windows were frequently broken in the buildings owned by or occupied by Consolidated to the extent that it was almost a daily occurrence, including - - - - and to a lesser extent to the other buildings of Consolidated throughout twenty-three counties of Ohio. On several occasions, Consolidated's exchange buildings were broken into. doors and windows were broken in, telephone and other equipment and furniture were damaged and destroyed—"

The Amended Petition mentions by name some four buildings in Scioto County, one building in Pickaway County, one building in Harrison County, and two buildings in Jefferson County, without any allegation as to the alleged damage to any of these and without any allegation as to dates of alleged acts.

This paragraph does not meet the requirements of the Order of this Court, and the same is so worded that in no place does it comply with the specific Order of this Court, as to the Amended Petition, that the same show:

55 (a) Month, day and year of its occurrence;

(b) Place where it occurred;

(d) Nature and substance of the occurrence;

56 (a) Describe and identify the property damaged or destroyed, giving its location;

(b) State the date of such damage or destruction;

(c) State the nature or character of such damage or destruction;

(e) State the amount of damages sustained, or facts which afford a basis upon which the damages may be estimated.

The Court holds that the said Fifteenth (15th) paragraph of the Amended Petition, as found on page 6 thereof, does not comply with the Entry and Order of December 31, 1958, Journal 104, page 249.

In no sense of the word can the Sixteenth (16th) paragraph of the Amended Petition be said to comply with the Order and Entry of December 31, 1958, Journal 104, page 249. This states:

"—Consolidated's telephone plant, including its poles, wires, strands, cables, booths, instruments, and other equipment were cut, broken, damaged, removed, stolen and carried away as almost a daily occurrence."

There is not the slightest attempt in this paragraph to comply with the Order of this Court of December 31, 1958, in which the Court ordered that the Amended Petition comply with the rulings of the Court, which included, that the Amended Petition state as to the alleged acts of damage:

55 (a) Month, day and year of its occurrence;

(b) Place where it occurred;

(d) Nature and substance of the occurrence;

56 (a) Describe and identify the property damaged or destroyed, giving its location;

(b) State the date of such damage or destruction;

(c) State the nature or character of such damage or destruction;

(e) State the amount of damages sustained, or facts which afford a basis upon which the damages may be estimated.

This Sixteenth (16th) paragraph is merely an enlargement, in general terms, of parts of Sixth (6th) paragraph of original Petition (now Seventh [7th] paragraph of Amended Petition), and of Seventh (7th) paragraph of original Petition (now Eighth [8th] paragraph of Amended Petition), without any apparent attempt to comply with the Order of this Court of December 31, 1958, as journalized in Journal 104, page 249.

The Court holds that this said Sixteenth (16th) paragraph of the Amended Petition, as found on page 7 thereof, does not comply with the Order and Entry of December 31, 1958, Journal 104, page 249, but is in direct violation of said Order and Entry and is in disobedience to said Order and Entry of this Court.

— — — — — — — — — — — — — — — — —

Let the rest of the Amended Petition, and the Petition be examined, omitting from the Petition, the words ordered stricken out by the Court in its Entry of December 31, 1958.

The First (1st) paragraph of the Amended Petition is only a general one, stating that General Telephone Company of Ohio is the transferee of the assets of Ohio Consolidated Telephone Company, and is successor in interest in this cause of action. This paragraph was not found in the original Petition.

The Second paragraph in Amended Petition, is the same as the first paragraph of the original Petition, with such change in wording as was necessary by reason of the substituted Plaintiff, and states that Ohio Consolidated Telephone Company was corporation, engaged in business of telephone service in twenty-seven counties in State of Ohio, and owns properties therein.

The Third (3rd) paragraph in Amended Petition was the Second (2nd) paragraph of the Petition, states that the defendant, Communications Workers of America (AFL-CIO) is an unincorporated association or labor union, and gives its officers.

The Fourth (4th) paragraph in Amended Petition was the Third (3rd) paragraph in the original Petition, and states affiliation of Communications Workers of America with American Federation of Labor and the Congress of Industrial Organizations, that its membership is divided into locals, and defendant locals are the locals to which employees of Consolidated belong.

The Fifth (5th) paragraph in Amended Petition was the Fourth (4th) paragraph in the original Petition that, the defendant Communications Workers of America called a strike of Consolidated's employees to begin July 15, 1956, and it continued until February 27, 1957.

The Sixth (6th) paragraph in Amended Petition was the Fifth (5th) paragraph in the original Petition, and alleges that in furtherance of said strike, a conspiracy was entered into to damage Consolidated's properties, etc., with intent to force Consolidated to agree to demands made upon it.

The Seventh (7th) paragraph in Amended Petition, which was the Sixth (6th) in the Petition, and the Eighth (8th) paragraph in Amended Petition, which was the Seventh (7th) in the original Petition have heretofore been shown herein.

The Eighth (8th) paragraph in the original Petition, which is the Ninth (9th) paragraph in the Amended Petition, sets out alleged intimidation of employees of Consolidated.

The Tenth (10th) paragraph of the Amended Petition was the Ninth (9th) paragraph of the original Petition, and sets out the closing of certain exchanges, and alleged damage to alleged goodwill, and alleged loss of profits and revenues. (No specific allegations as to either set out.)

The Eleventh (11th) paragraph in the Amended Petition was not found in the original petition, further refers to alleged intimidation of employees of Consolidated, and alleges dates that various telephone exchanges were closed.

The Twelfth (12th) paragraph in the Amended Petition, which was not found in the original Petition, has heretofore been shown herein.

The Thirteenth (13th) paragraph in the Amended Petition which was not found in the original Petition, mentions alleged harrassment of Consolidated's employees, and alleged physical attacks on them, giving dates, but not places where the same might have occurred.

The Fourteenth (14th), the Fifteenth (15th) and the Sixteenth (16th) paragraphs of the Amended Petition, which were not found in the original Petition, have heretofore been shown herein.

The Seventeenth (17th) paragraph of the Amended Petition has heretofore been set out herein, and the Court finds that the same is partial and shortened rewording of the Tenth (10th) paragraph of the original Petition, which was ordered by the Court in the Journal Entry of December 31, 1958, Journal 104, page 249, to be entirely stricken from the Petition.

The Eighteenth (18th) paragraph of the Amended Petition, is the general prayer for judgment, which was the Twelfth (12th) paragraph in the original Petition.

The Court finds that in the whole of the Amended Petition, there is a failure of the Plaintiff, the substituted Plaintiff, to conform to and follow the Order of the Court of December 31, 1958, Journal 104, page 249, which says:

"It is, Therefore, Considered and Ordered by the Court that plaintiff comply in all respects with the above rulings of this Court and make its petition definite and certain by filing its amended petition herein - -"

Among the rulings mentioned in this Order just above cited, was the sustaining of Defendants' motions, 55a, 55b, 55d, 56a, 56b, 56c and 56e, which have heretofore been set forth and fully mentioned.

The other paragraphs in the Amended Petition add nothing whatever to the apparently carefully omitted portions of paragraphs 7, 8, 12, 14, 15 and 16 therein, in none of which mentioned paragraphs were the positive rulings of this Court of Common Pleas complied with. The whole Amended Petition completely fails to comply with the positive rulings of this Court of Common Pleas, and the Court is of the firm belief that the same was drawn in contempt of the Orders of this Court, especially when the Sixteenth paragraph of the Amended Petition is read, after reading the Order of the Court, and considering what Motions were referred to therein.

The Revised Code specifically says, in §2309.34 R. C.:

"When the allegations of a pleading are so indefinite and uncertain that the precise nature of the charge—is not apparent, the court may require the pleadings to be made definite and certain by amendment."

The Motions of the Defendants for an Order to Require the Plaintiff to Make its Petition Definite and Certain was filed under such section, as the same is cited by counsel for Defendants in their Memorandum.

The Courts of Ohio have held that this is a substantial right of a party to litigation. The Court shall in a proper case require the pleading to be made definite and certain; it is not a mere matter of discretion. It is a substantial right to a party to have a pleading against him or them so definite and certain as to enable him or them to know what he or they have to meet, and to prepare the evidence accordingly.

The Court on December 31, 1958, in its Journal Entry, Journal 104, page 249, required the Plaintiff to make its petition definite and certain, in several certain and very definite matters, as to which there could not be the slightest misunderstanding.

It has been generally held that where an order has been granted to make a pleading definite and certain, or more specific, the failure to comply therewith is an act of contempt.

Here there is not even an attempt to make substantial compliance with the Order and Entry of December 31, 1958, in the Amended Petition.

— — — — — — — — — — — — — — — — — — — —

At the time of the Entry of December 31, 1958, Journal 104, page 249, in accordance with the opinion of December 17, 1958, the Plaintiff was given leave until February 15, 1959, to file its Amended Petition herein. Within such time, to-wit, on February 13, 1959, the now substituted Plaintiff, by counsel (who had represented the Plaintiff, and now represented the now substituted Plaintiff), tendered Motion of substitution of party Plaintiff (which was that day filed by the Clerk of Courts in this action), accompanied by Entry of Substitution, and its Amended Petition.

The Court did not instantly pass upon the Motion, and upon consideration of the tendered Amended Petition, the Court was of the firm opinion that, if counsel, for the substituted (or proposed to be substi-

tuted) plaintiff were given additional time, they, as officers of the Court, would file or tender another or substituted Amended Petition, which would in full comply with the opinion of this Court on December 17, 1958, and the Journal Entry of December 31, 1958, Journal 104, page 249. This was not done, and the Court had a hearing upon the Motion of proposed Substitution, on June 19, 1959.

Again, the Court delayed action, which would necessitate the filing of the tendered Amended Petition, but the counsel for substituted Plaintiff failing to tender a proper Amended Petition, the Entry of Substitution of Plaintiff was finally entered herein on October 6, 1959, whereupon forthwith, the Clerk of Courts filed the only Amended Petition that had been tendered for filing herein.

This date of October 6, 1959, is some two hundred and ninety-three (293) days from the opinion of this Court of December 17, 1958, and some two hundred and seventy-nine (279) days from the Journal Entry of December 31, 1958. If there was any intention on the part of the substituted plaintiff, through its counsel, of complying with the Order of this Court, as to the making of the Petition Definite and Certain, the Court feels that such long time is well more than ample time, for the full preparation of a complete Amended Petition that would fully comply with the rulings of this Court.

At no time has the Court ever been asked for any additional time, for the full preparation of an Amended Petition that would comply with the orders of this Court.

This Court is of the opinion that the requirements in the Entry of December 31, 1958, as to the Amended Petition, were not and are not unreasonable, that the same relate to facts well within the knowledge of the substituted plaintiff, as succeeding the plaintiff, who or which operated the telephone company at the time of the alleged acts and occurrences, through its employees; that the information required to be furnished in the Amended Petition, in accordance with the Order of this Court, would become pertinent in this case, and the defendants were entitled to the same, and were entitled to have the same set out in the Amended Petition.

The substituted Plaintiff, and its counsel, have shown no reason of any kind, for the failure and refusal to comply with the order of this Court of December 31, 1958, Journal 104, page 249.

It has been generally held that such failure or refusal to comply with such Order of a Court is an act of contempt. And a Court has the inherent power, as well as statutory authority, to protect itself, to protect litigants, and to protect the public generally from such refusal by a litigant to comply with the Order of a Court.

The plaintiff selected this County of Clinton, Ohio, as the place for filing and starting this action, when it could have selected several other places for the filing of this action. Not only is no reason shown for the failure to comply with the Order of this Court, of December 31, 1958, but no reason has been shown why the Plaintiff (substituted) again declares and alleges in general terms, as in the Sixteenth (16th) paragraph of the Amended Petition.

No Court is required to allow itself to be put in a place where it has to pass upon the same and identical matter twice in the same lawsuit.

This date, October 21, 1959, is now some three hundred and eight (308) days from the Court's opinion of December 17, 1958, and is some two hundred and ninety-four (294) days from the Journal Entry of December 31, 1958. There being such a long period of time since the opinion and the Order, this Court is now justified in being of the opinion that there is no intention on the part of the substituted plaintiff, in fully complying with such Entry and Order of this Court.

— — — — — — — — — — — — — — — — — — — — — —

The Court finds and holds that there has been great disobedience by the Plaintiff and the substituted Plaintiff of an Order of this Court of Common Pleas of Clinton County, Ohio, concerning the proceedings in this action, and finds that this action should be dismissed, without prejudice to a future action in any court where there may be proper venue, under the inherent powers of a Court, and under the provisions of §2323.05 (E) R. C.

It is therefore the Order, Judgment and Decree of this Court of Common Pleas of Clinton County, Ohio, that the Amended Petition herein be stricken from the files, as not complying with former order of this Court, and that this action be now dismissed (under the inherent powers of the Court, and under authority of §2323.05 [E] R. C.) for disobedience by the plaintiff and substituted plaintiff, of an Order of this Court, concerning the proceedings in this action, without prejudice to a future action, in any Court where there may be proper venue in such action; the said dismissal and all costs hereinbefore accrued herein to be at the costs of the Plaintiff and of the substituted plaintiff.

The Court further orders that under the provisions of §2323.26 (A) R. C., a complete record herein shall not be made, as is required otherwise by §2323.23 R. C., and the Clerk of Courts is hereby ordered and directed not to make a complete record of the proceedings herein.

And the Clerk of Courts of Clinton County, Ohio, is hereby ordered and directed to transmit (by certified mail or registered mail, return receipt requested) a certified copy of this Entry of Dismissal of Action, to Messrs. Power, Griffith & Jones, 50 West Gay Street, Columbus 15, Ohio, attorneys of record for the Plaintiff and substituted Plaintiff herein, and to Messrs. Waite, Schindel, Bayless & Schneider, Union Central Building, Cincinnati 2, Ohio, attorneys of record for the several defendants herein, and such copy of this entry to said attorneys shall be notice to the several parties hereto, to-wit: the plaintiff and substituted plaintiff, and also to the several defendants herein.

And the Court does further order that if the deposit for costs hereinbefore made is insufficient to cover the costs herein, the Clerk of Courts shall or may issue execution for the balance of costs above the deposit so made.